UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-CR-74 |
| | ) | |
| CHRISTY MYERS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the United States' Motion for Review of Release Order [Doc. 32], requesting the revocation of the release order issued by Magistrate Judge Alistair E. Newbern in the Middle District of Tennessee on September 22, 2020 in *United States v. Myers*, No. 3:20-mj-4199 (M.D. Tenn. Sept. 21, 2020).[1] This Motion was referred to the undersigned for report and recommendation by Senior District Judge J. Ronnie Greer pursuant to 28 U.S.C. § 636(b). The Court held a hearing on the Motion for Review via videoconference on November 5, 2020. Appearing before the Court were Assistant United States Attorney Meghan Gomez on behalf of the Government, Defendant's counsel, Attorney Dan R. Smith, and Defendant.

For the reasons discussed herein, the Court **RECOMMENDS** that the United States' Motion [Doc. 32] be **GRANTED** and that Defendant be detained pending trial in this matter.

---

[1] A copy of this Order was attached to the United States' Motion as an Exhibit [Doc. 27-2] and the separate Order setting Conditions of Release [Doc. 45-9] referenced therein was provided to the Court prior to the hearing on the United States' Motion.

## I. BACKGROUND

Count One of the Indictment charges Defendant [Doc. 3] with conspiracy to knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and Count Two charges Defendant with conspiracy to knowingly and intentionally conduct and attempt to conduct financial transactions with intent to promote the distribution of methamphetamine, a Schedule II controlled substance.

Defendant was arrested on these charges in Nashville, Tennessee on September 17, 2020 on the outstanding arrest warrant resulting from the Indictment. Defendant appeared before Judge Newbern in the Middle District of Tennessee for an Initial Appearance on the same date, and a detention hearing was scheduled for September 22, 2020. Defendant appeared before Judge Newbern for the detention hearing as scheduled, along with John G. Oliva, the CJA panel attorney appointed to represent her in the Middle District. *United States v. Myers*, No. 2:20-mj-4199 (M.D. Tenn. Sept. 21, 2020); *see* [Doc. 44].

The United States sought to detain Defendant pending trial, alleging there were no conditions or combination of conditions that would assure the appearance of Defendant and the safety of the community [Doc. 44-1]. The Government proffered that Defendant was identified by a confidential informant as the girlfriend of Charles Elsea ("Mr. Elsea"), the leader of a drug trafficking organization and president of Brotherhood Forever, an affiliate of the Aryan Brotherhood, who has been orchestrating cross-country drug trafficking activities from his prison cell. *United States v. Myers*, No. 3:20-mj-4199 (M.D. Tenn. Sept. 21, 2020), ECF Doc. 15, pp. 4, 6. The relationship between Defendant and Mr. Elsea was further verified by the discovery of numerous photographs of Mr. Elsea in Defendant's bedroom at the time of her arrest in addition to photographs of Defendant and recorded Facetime conversations between Defendant and Mr. Elsea that were found on cell phones seized from Mr. Elsea by the Tennessee Department of Correction ("TDOC"). *Id.* at p. 4-5.

The Government further proffered that Defendant travelled to Carter County, Tennessee on several occasions to deliver concealed packs of methamphetamine to a distributor, which were recovered from co-defendants in this case. *Id.* at p. 5. The United States stated Defendant travelled to East Tennessee at least ten times to deliver 2-3 pounds of methamphetamine each time. *Id.* Two additional confidential informants reported Defendant's presence during multiple drug transactions and alleged she both delivered drugs to and picked up money from the East Tennessee distributor. *Id.* On at least one occasion she assisted in counting $30,000. *Id.* A fourth confidential informant told investigators that Defendant went on at least one trip to pick up money and/or deliver drugs and a fifth informant identified Defendant as a person that had been making trips to pick up methamphetamine. *Id.* at p 5-6. The Government concluded its proffer by stating that these informants have identified Defendant by her driver's license photo as well as through the photographs and communications obtained that demonstrate Defendant's relationship with Mr. Elsea. *Id.* at p. 6.

The United States argued that Defendant should not be released due to the danger she presents to the community and because she poses a flight risk. *See id.* at p. 20. First, the Government pointed to the fact that, if convicted, Defendant faces a mandatory minimum sentence of ten-years imprisonment, but a maximum sentence of life imprisonment. *Id.* Additionally, the Government argued that Defendant has multiple prior failure to appear charges in 2011, 2013, and 2016 as demonstrated by the Pretrial Services Report, in addition to having no verifiable employment history. *Id.* The United States argued that the totality of Defendant's criminal history, which includes charges for forgery, fraud, and harboring a runaway child in addition to the failures to appear, demonstrates a willingness and ability to take fraudulent measures and to possibly abscond. *Id.* at p. 21.

The Government further noted that the living situation proposed by Defendant should she be released is the same one in which she was living while she was involved in the criminal conduct

related to the current charges and pointed out that such an arrangement would make it difficult to ensure Defendant was not communicating with Mr. Elsea. *Id.* The Government also advised that Defendant was on probation for multiple offenses during a portion of the time covered by the Indictment, arguing that this fact demonstrates the likelihood that Defendant will engage in further criminal conduct if released, despite supervision. *Id.*

Finally, the United States stated that the seriousness of the offenses, specifically the amount of methamphetamine involved, is inherently dangerous to the community and the evidence indicates Defendant is willing to carry out criminal acts as part of the conspiracy to traffic methamphetamine, likely at the behest of Mr. Elsea. *Id.* at p. 22. The Government concluded by arguing that the most notable factors weighing in favor of detention are Defendant's alleged criminal conduct while on probation and insufficient proof that Defendant will refrain from contacting any of the co-defendants or witnesses in this case. *Id.*

On the other hand, Defendant contended that she was appropriate candidate for pretrial release and presented witness testimony and proffer in support of that contention. Defendant's mother, Cynthia Hawkins Ray ("Ms. Ray"), testified on Defendant's behalf. Ms. Ray testified that she resides in White House, Tennessee and has resided in the same home since 1994. *Id.* at p. 8. Defendant has lived alone in a separate apartment on her property for approximately eight years. *Id.* at p. 8-9. Ms. Ray explained that although the apartment is separate from the main house in that you must exit one to the outside to enter the other, the structures are so close together that the exteriors touch. *Id.* at p. 9.

Ms. Ray testified that several other individuals live with her in the main house, including her husband, her adult grandson, her two minor granddaughters, and an adult family friend. *Id.* at p. 10. She stated that no one in the home has been convicted of a felony to her knowledge. *Id.* at p. 10-11. Ms. Ray said there are no firearms or ammunition in the house because she has small children living there and there are no controlled substances. *Id.* at p. 11. She explained that the

minor children residing in her home are Defendant's daughters and that she has custody of them. She further noted that she serves as the children's primary caregiver, but also stated that Defendant helps her care for them. *Id.* at p. 14. Ms. Ray stated she wants Defendant to be a good mother to her daughters. *Id.*

Ms. Ray testified that she understood that if she were to serve as Defendant's third-party custodian, she would not be permitted to have controlled substances on her property and stated she was willing to abide by that requirement. *Id.* at p. 11-12. She also testified that she understood that if Defendant was released from custody and failed to abide by any conditions of release imposed by the Court Defendant could be returned to custody. *Id.* at p. 12. Ms. Ray stated that even with this knowledge if she were aware of Defendant violating the conditions of her release, she would report it to probation or law enforcement because she wants Defendant to do what is right. *Id.* at p. 12-13. Defendant previously wrote checks on some of Ms. Ray's cancelled accounts without her permission and Ms. Ray reported Defendant to the police and she was prosecuted. *Id.* at p. 13-14. Ms. Ray testified that knowing and understanding the responsibilities and obligations of being a third-party custodian and knowing the charges Defendant is facing she is willing to serve as Defendant's third-party custodian. *Id.* at p. 13.

On cross examination, Ms. Ray explained that if Defendant were released, she would return to the apartment where she had previously stayed and would not reside in the main house. *Id.* at p. 15. Ms. Ray stated she was aware that the conditions of Defendant's release may preclude her from talking to any co-defendants or anyone else related to this case, including Mr. Elsea. *Id.* Ms. Ray said she would monitor Defendant to ensure she is not communicating with individuals in violation of the conditions of her release, but admitted she could not monitor Defendant at all times and would have to depend on Defendant to be truthful with her when she asked her if she had been communicating with prohibited individuals. *Id.* at p. 16.

Defendant also proffered that she was prepared to wear an ankle monitor should she be

released to ensure that she remains within whatever parameters are set by the Court. *Id.* at p. 17. She further stated that she is willing to find a job and believed she would be able to obtain a job at a Macy's warehouse in the Portland area relatively easily through a temporary agency. *Id.* Defendant also stated a curfew could be imposed to ensure she was home at specific times set by the Court when she is not at work or attending Court or medical appointments. *Id.* at p. 18.

Defense counsel argued that the conditions proposed in the Pretrial Services Report and the additional conditions presented to the Court would protect the community and assure Defendant's attendance in Court. *Id.* He explained a job would provide Defendant with structure and the money necessary for transportation to and from the Eastern District of Tennessee for court appearances and/or meetings with counsel. *Id.* Defense counsel also stated that a curfew would keep Defendant out of trouble but noted there is no indication she has been in trouble late at night and has no history of violence. *Id.* He pointed out there is no history of methamphetamine use on Defendant's record and all previous drug-related charges are simple possession with no record or prior allegations of involvement in drug trafficking, distribution or delivery. *Id.* at p. 18-19. He further argued that Defendant has matured and is doing what is necessary to address any outstanding legal matters, citing the fact that Defendant turned herself in on the last matter reported on the Pretrial Services Report, a driving on a revoked license charge. *Id.* at p. 19. Defense counsel concluded by stating that under the combination of the conditions recommended in the Pretrial Services Report and those presented to the Court during her proffer, Defendant will not present a danger to the community and will attend court as instructed. *Id.* at p. 19.

In rebuttal, Defendant's attorney responded to the Government's argument that Defendant would likely have contact with Mr. Elsea or other individuals involved in the case by arguing that because Mr. Elsea is still in custody the potential for him to have access to a cell phone is "probably much diminished compared to before," the potential for Defendant to have contact with Mr. Elsea or any other witness of codefendant is small, at best, and there is nothing to suggest she would

disobey a specific instruction by the Court to have no contact with any witness or co-defendant. *Id.* at p. 23-24. He also argued that her relationship with Mr. Elsea does not demonstrate that Defendant is a danger to the community or a flight risk. *Id.* at p. 24. Defense counsel further argued that the Government's proffer does not carry the weight necessary to support detention pending trial. *Id.*

After hearing testimony and oral argument, Judge Newbern found that Defendant had rebutted the applicable presumption and ordered Defendant released pending trial. First, Judge Newbern found that the evidence Defendant presented by proffer and the testimony of Ms. Ray was sufficient to overcome the presumption in favor of detention. *Id.* at p. 27-28. She next explained that the presumption now becomes a factor to be considered along with other factors set out by law for consideration in deciding whether Defendant should be released pending trial.

Judge Newbern then addressed the nature and circumstances of the offenses with which Defendant is charged. She noted that Defendant has been identified by five confidential informants as delivering pound quantities of methamphetamine as well as picking up quantities of methamphetamine and large amounts of money, up to $30,000.00, as part of a methamphetamine distribution conspiracy. *Id.* at p. 28. Judge Newbern also noted that these alleged activities are all part of an enterprise led by Mr. Elsea, who is running the enterprise while incarcerated and is alleged to be Defendant's boyfriend with whom she has been communicating on contraband cellphones based on the Government's proffer. *Id.* at p. 28-29. She concluded that the nature of the charges against Defendant is that they are dangerous, particularly the conspiracy to distribute methamphetamine that leads to the distribution of very dangerous substances into the community and the circumstances of the charges are also dangerous due to the amount of methamphetamine and money allegedly distributed and the extent of the enterprise. *Id.* at p. 29.

Next, Judge Newbern addressed the weight of the evidence as to the danger Defendant would present if released. *Id.* In addressing this factor, Judge Newbern noted the United States had only presented evidence through a proffer. She went on to explain that evidence by proffer is not

as weighty as evidence that is presented by witnesses and subject to cross-examination, but the relative specificity of some of the information presented by the Government "does add weight to the evidence presented by proffer." *Id.* at p. 30.

The next factor Judge Newbern addressed was Defendant's personal history and characteristics. She pointed to Ms. Ray's willingness to serve as Defendant's third-party custodian and her testimony that she wants Defendant to "do right" as weighing in Defendant's favor. On the other hand, Judge Newbern noted that the Pretrial Services Report shows no recent employment history but mentioned that it appears Defendant does provide some childcare for her children who live with her mother. *Id.* Judge Newbern also pointed out that Defendant's criminal history includes convictions for several offenses, many of which involve forgery or crimes of deception; however, Judge Newbern also noted that Defendant has an entirely misdemeanor record, which is less serious than many criminal records seen by the Court. At the same time, she noted that her record does "include some crimes that involve making false statements." *Id.* at p. 31. Judge Newbern also addressed whether Defendant was on probation or some other type of supervised release when the alleged offenses were committed. She found that "the answer to that is likely yes," but noted that due to the long period of time covered by the Indictment and with Defendant's criminal history it is difficult to tell how the dates would match up; however, she found it was clear that Defendant was "serving some probation during the time period that's alleged in the indictment." *Id.*

The final question Judge Newbern addressed was the nature of the danger presented and whether that danger can adequately be controlled by conditions of pretrial release. In addressing this question, Judge Newbern took into consideration the recommendation of the Office of Pretrial Services, which recommended release for Defendant. *Id.* at p. 32. Judge Newbern then turned to the specific conditions she could impose to control the danger presented by Defendant's release. She stated that Defendant is essentially accused of "[r]unning drugs and money as part of a

conspiracy," and the conditions of location monitoring and home detention can be imposed to address that danger. *Id.* Additionally, Judge Newbern found that the danger presented by Defendant's involvement in a conspiracy can be addressed by prohibiting Defendant from having contact with any co-defendants, including Mr. Elsea. *Id.* She also noted that imposing a work requirement would be a positive influence on Defendant and give Defendant something to do with her time and allow Defendant to demonstrate that she is able to maintain legitimate employment and able to follow the conditions of release imposed by the Court. *Id.* at p. 32-33.

Judge Newbern concluded that due to Defendant's relatively minimal criminal history, the willingness of Defendant's mother to serve as third-party custodian, the recommendation of Pretrial Services that Defendant be released, and the Court's ability to impose the specific conditions mentioned to address any danger presented by Defendant's release, pretrial release was appropriate. *Id.* at p. 33. She ordered Defendant's release, subject to the conditions imposed by the Court. She also addressed the responsibilities of a third-party custodian with Ms. Ray, who affirmed to the Court she was willing to serve as Defendant's third-party custodian. *Id.* at p. 33-35. Judge Newbern also reviewed the conditions of release and penalties for violating the conditions with Defendant. *Id.* at p. 35-40.

Upon the motion of the Government, Judge Newbern agreed to stay her order of release for 24 hours to allow the United States to determine whether it would appeal the order of release. *Id.* at p. 40-41. The Government then filed the motion at issue here [Doc. 27] on September 22, 2020, requesting that the Court stay the release order from the Middle District of Tennessee until a hearing could be held in the Eastern District of Tennessee, and further requesting that Judge Newbern's release order be overturned. Senior District Judge J. Ronnie Greer subsequently stayed Judge Newbern's release order and ordered that Defendant remain detained pending resolution of the Government's motion. [ Doc. 34].

On October 5, 2020, Defendant appeared before the undersigned for arraignment in the

Eastern District of Tennessee and for a hearing on the United States' motion; however, Defendant requested additional time to prepare for the hearing and expressed a desire for the Court to consider the witness testimony offered during the detention hearing in the Middle District of Tennessee. The Court granted Defendant's request for a continuance and entered an Order advising that the matter would be reset upon notice that Defendant was ready to proceed. [Doc. 48]. Defendant filed a Notice to proceed [Doc. 78] on October 28, 2020. A video hearing was then held on November 5, 2020 to address the Government's motion for review of the release order. Appearing before the Court were Defendant and her appointed counsel, Dan R. Smith, *Esq.*, and Assistant United States Attorney Meghan Gomez.

## II.   SUMMARY OF INFORMATION OFFERED AT THE NOVEMBER 5 HEARING

AUSA Gomez first offered additional information to supplement the United States' proffer made during the detention hearing in the Middle District of Tennessee. AUSA Gomez stated that in addition to communicating with Mr. Elsea on contraband cell phones while Mr. Elsea was incarcerated, Defendant was delivering cell phones to others not in custody to facilitate their communication with Mr. Elsea. She further proffered that marijuana was found in Defendant's home during her arrest and Defendant admitted daily use of marijuana. Additionally, AUSA Gomez stated that drugs had been delivered to Defendant's adult son, who resides in the home with Defendant's mother and Defendant's minor children with that home being on the same property as Defendant's proposed residence.

Pretrial Services in this District considered the report of its Middle District colleagues and spoke to Ms. Ray and made its own recommendation in the form of a supplemental memorandum, which was provided to counsel for review. In response to detailed questions, Ms. Ray admitted to a Pretrial Services Officer in this District that Defendant has never worked, paid rent, or contributed to utilities during the eight years she has lived in the apartment on her property. Additionally, Ms. Ray was forced to admit that she had observed Defendant smoke marijuana and did not like her

daughter engaging in that activity. When asked why she would permit Defendant to use illegal drugs on her property if she did not approve, Ms. Ray had to acknowledge that she "cannot do much with her." Based upon the totality of the circumstances, including Defendant's numerous failures to appear and probation violations, Pretrial Services in this District recommended detention.

The United States argued that Defendant is a risk to the community and a flight risk, as evidenced by Defendant's willingness to do the bidding of Mr. Elsea. The Government further argued that the additional admissions that Ms. Ray had made in response to the questioning of Pretrial Services demonstrate that Ms. Ray was aware of Defendant's drug use and could not do anything about it and calls into serious question the ability of Ms. Ray to ensure Defendant would follow any of the conditions of her pretrial release since she has not been able to prevent her from engaging in illegal behavior in the past. Further, the Government argued that although Ms. Ray was under oath when she agreed to serve as Defendant's third-party custodian, she was also under the eyes of her daughter. The United States concluded by arguing that this new information when viewed in conjunction with that provided to Judge Newbern demonstrates that Defendant cannot meet her burden of production and should be detained as she poses both a danger to the community and a flight risk.

In contrast, Defendant's counsel contends that Judge Newbern gave appropriate weight to the factors listed in 18 U.S.C § 3142(g) in determining that Defendant should be released. Moreover, her counsel argues that whether Defendant should be released is dependent upon whether the proof indicates Defendant will comply with the conditions of her release and will show up for Court. Defendant's counsel further argued that the additional information presented to the Court by the Government is insufficient to overcome Judge Newbern's conclusion that by appointing Defendant's mother, Ms. Ray, as Defendant's third-party custodian Ms. Ray would have the ability and willingness to ensure that Defendant did not continue to use drugs. Additionally, defense counsel argued that Ms. Ray's past willingness to report Defendant's illegal conduct to law enforcement demonstrates her willingness to meet her obligations as a third-party custodian. Defendant's

counsel concluded his argument by emphasizing that Ms. Ray agreed to serve as Defendant's third-party custodian under oath during the initial detention hearing and any subsequent doubts she might have expressed do not overcome that sworn testimony.

The official transcript of the detention hearing before Judge Newbern was made an exhibit to this hearing and has been considered by the Court, along with the Pretrial Services Report from the Middle District of Tennessee, and the memorandum from Pretrial Services in this District. Defendant offered no additional testimony or exhibits to the Court for consideration.

### III. STANDARD OF REVIEW

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

In the instant case, the Government moved for detention and Judge Newbern then held a detention hearing to determine whether Defendant should be detained. Because of the specific crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). Here, the Indictment provides the necessary probable cause to believe that Defendant has committed an offense under the Controlled Substances Act for which she faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of

production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the defendant must present at least some evidence that she is not a danger or a flight risk. *Id.* Even when the defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors, because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the defendant *de novo*.[1] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that de novo review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075 at *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

## IV. ANALYSIS

As discussed above, the Court finds that the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there is "no condition or combination of conditions [that] will reasonably assure

---

[1] Although a magistrate judge cannot review another magistrate judge's decision to release a defendant, a district judge may refer the Government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC- REW, 2017 WL 5711438, *2–3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *report and recommendation adopted by,* 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all the evidence offered to that point. *Shaw*, 2017 WL 5711438. at *3.

the appearance of the person as required and the safety of the community" applies in this case, because Defendant is charged with a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. At the same time, the Court finds that Defendant has initially rebutted this presumption by providing evidence that her criminal history is limited to misdemeanor offenses, that she has strong ties to the Middle Tennessee community as evidenced by maintaining the same residence for eight years and that she has a very supportive family. That finding does not end the inquiry, and the Court must now consider the presumption merely as one of the several factors used in analyzing whether release is appropriate. *See Stone*, 608 F.3d at 945.

First, the Court finds that the nature and circumstances of the offense charged weigh in favor of detention. 18 U.S.C. § 3142(g)(1). The Court notes that Defendant is charged with conspiracy to knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, and with conspiracy to knowingly and intentionally conduct and attempt to conduct financial transactions with the intent to promote the distribution of methamphetamine, a Schedule II controlled substance. In its motion [Doc. 32], the United States detailed how Defendant had been identified through several investigative techniques, including co-conspirators and confidential informants, as the girlfriend of Mr. Elsea, the leader of a dangerous prison gang responsible for trafficking and distributing hundreds of pounds of methamphetamine [Doc. 32, p.2]. Additionally, according to at least one co-conspirator, Defendant has assisted in the delivery of 2-3 pounds of methamphetamine at least ten times and was present and assisted multiple times in the collection of money from the distribution of methamphetamine. Multiple co-conspirators have provided statements regarding Defendant's culpability and Defendant is believed to have distributed more than 4.5 kilograms of methamphetamine. Additionally, Defendant is alleged to have been involved in supplying cellular telephones to several individuals who were not incarcerated so they could use them to coordinate drug distribution with Mr. Elsea.

Second, the weight of the evidence of Defendant's dangerousness also supports a finding that Defendant should be detained. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. The Court finds that the allegations submitted by the Government support a finding that Defendant poses a significant danger to the community which no combination of conditions sufficiently addresses. The charged offense involves large quantities of dangerous narcotics, specifically methamphetamine. The Court further notes that Defendant is alleged to have herself used illegal drugs on a daily basis and chose to conspire with members of a dangerous prison gang to distribute methamphetamine while on probation for other criminal convictions in addition to distributing cell phones to facilitate Mr. Elsea's direction of the methamphetamine distribution conspiracy from prison. The Court notes that Defendant's proposed third-party custodian had been unsuccessful in stopping Defendant from using illegal drugs on the third-party custodian's property in the past and either was unaware of Defendant's other criminal activity or had been unable to convince Defendant to turn away from the activity. It is important to note that the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community").

The third factor examines Defendant's history and characteristics, including her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). Defendant argues that her lack of any prior felony charges or history of

violence weighs in her favor; however, while Defendant does not have any prior felony convictions, her criminal history includes several failures to appear as well as convictions for forgery and other crimes of deception. Additionally, Defendant has had prior probation violations and it appears she was on probation for at least a portion of the time during which she is alleged to have been participating in the distribution of methamphetamine with which she is now charged. This demonstrates that, although Defendant does not have any prior convictions for serious felony or violent crimes, she does have a history of deceptive behavior, failure to report to court as instructed, and failure to follow conditions of release.

According to the record before the Court, Defendant has also been unemployed since at least 2010 and her work history prior to that is inconsistent. While she apparently plays some secondary role in raising her children the proof demonstrated that her mother bears the primary responsibility for those children; therefore, Defendant cannot contend that her unemployment stemmed from serving as a full-time parent. Additionally, Defendant has apparently been fully supported by her family and apparently illegal activity. When questioned by Pretrial Services, Ms. Ray was forced to admit that Defendant had contributed nothing to the household expenses for the entire eight years that she had lived on Ms. Ray's property. Defendant acknowledged that she used marijuana daily. Without having any income from employment, the Court is left to conclude that Defendant was necessarily engaging in illegal activity to earn money to purchase drugs.

Defendant also argues that the willingness of Defendant's mother, Ms. Ray, to serve as third-party custodian weighs particularly in her favor; however, the Court observes that despite Ms. Ray having previously turned Defendant in to law enforcement, Defendant's behavior did not change as a result. Ms. Ray also would be living separately from Defendant, although on the same property. This would provide Defendant with the opportunity to continue her illegal activities without Ms. Ray being able to detect them. While the Court is confident that Ms. Ray would report any illegal conduct or violations of conditions of release that came to her attention, Defendant

appears to have been engaging in very serious drug offenses while living on Ms. Ray's property, and Ms. Ray either was unaware of the conduct or unable to prevent it. Additionally, Ms. Ray reluctantly admitted that she knew Defendant used marijuana on her property but had been unable to stop Defendant's conduct.

What is most concerning to the Court is the danger Defendant presents to her own children. It is alleged that as part of the conspiracy at issue, drugs have been delivered to Defendant's adult son who resides with Mr. Ray. Defendant's willingness to involve her adult son in this illegal activity also causes the Court grave concern about the improper influence she will have on her minor children who are in Ms. Ray's custody, and the danger that the criminal activity may present to them given that she lives on the same property. Additionally, the proof demonstrated that Defendant was using marijuana daily when arrested and while Ms. Ray is the children's primary custodian the testimony showed that Defendant is still involved in their care. While on the one hand it is difficult for the Court to deprive children of their mother, to allow Defendant to continue to have access to them at this juncture presents too great a risk.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Due to the serious risk of danger associated with trafficking large quantities of methamphetamine, including Defendant's willingness to participate in the distribution of methamphetamine while on probation and expose her children to the use and trafficking of illegal substances, the Court finds that there simply is no combination of conditions which can reasonably assure the safety of Defendant's own children, much less the community as a whole.

Furthermore, the Court finds persuasive the Government's argument that Defendant poses a flight risk due to the length of the potential sentence she faces and her demonstrated history of failing to appear for court, even when such appearances were only in connection to misdemeanor offenses. The motivation for evading prosecution is much stronger in this case, where the penalties

Case 2:20-cr-00074-JRG-CRW   Document 92   Filed 11/23/20   Page 17 of 18
PageID #: 264

far exceed any punishment that could have been imposed on Defendant in the past for her misdemeanor crimes.

Consequently, the Court finds that the evidence and information provided at the hearing established: (1) by clear and convincing evidence that the Defendant poses a serious risk of danger to the community or another person; (2) by preponderance of the evidence that Defendant poses a risk of flight; and (3) that no condition or combination of conditions will reasonably assure the appearance of Defendant and safety of individuals of the community if the Defendant is released on bond.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** that United States' Motion for Review of Release Order [Doc. 32] be **GRANTED**, and that Defendant be detained pending trial.[2]

Respectfully submitted,

s/ Cynthia Richardson Wyrick
United States Magistrate

---

[2] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).